UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JAMES TRICKEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:09CV26 SNLJ |
| ) | |
| KAMAN INDUSTRIAL TECHNOLOGIES ) | |
| CORP., et al. ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

This is an employment discrimination case under the Missouri Human Rights Act (MHRA) Sec. 213.010 RSMo *et seq*. This matter is before the Court on Plaintiff's motion to compel (#28), filed June 21, 2010. Responsive memoranda, including supplemental memoranda, have been filed.

Plaintiff originally filed this cause of action in the Circuit Court of Cape Girardeau County on February 6, 2009, alleging that plaintiff's former employer, defendant Kaman Industrial Technologies Corp. ("Kaman"), and two employees of Kaman, defendants Tom Caputo and Ken Higgins, violated the MHRA by discriminating against plaintiff based on his age. Higgins was subsequently dismissed as a defendant because Higgins was not an employer within the meaning of the MHRA, and thus plaintiff's claim against Higgins was barred (#14). This Court retained diversity jurisdiction over this matter under 28 U.S.C. § 1332.

## FACTUAL BACKGROUND

Plaintiff's complaint alleges that he was employed by Kaman as Branch Manager for the Cape Girardeau Branch and that he reported directly to Caputo, who was the District Manager for Kaman. Plaintiff, who was over 65 years old at the relevant time, alleges that in July 2007 and October 2007, Caputo advised plaintiff that the company was looking to replace older employees with "younger blood." Plaintiff alleges that Caputo then undermined plaintiff's authority as Branch Manager through communications with plaintiff's subordinates and giving plaintiff's subordinate, Higgins, many of plaintiff's job duties. Plaintiff alleges that after an undeserved poor performance review in December 2007, Caputo placed plaintiff on an improvement plan and ultimately offered him a severance package in exchange for his resignation. Plaintiff filed his charge of age discrimination on January 26, 2008, and plaintiff was demoted on February 4, 2008 and suspended from his job without pay on May 8, 2008. Plaintiff alleges that while he was Branch Manager, the Cape Girardeau branch was ranked first in sales for its district in 2006 and 2007.

Plaintiff's motion seeks an order compelling defendants to answer certain interrogatories and respond to certain requests for production pertaining to Caputo and Higgins's meetings and communications (Interrogatories 13 and 14 and Requests for Production 13 and 14), Higgins's positions and promotions within Kaman (Interrogatory 17 and Request for Production 17), other suspended employees at Kaman (Interrogatory 22 and Request for Production 22), Caputo and Higgins's personnel files (Requests for Production 27 and 28), and internal and external documents related to complaints about discrimination (Requests for Production 30 and 31).[1]

---

[1]The plaintiff's motion also seeks an order compelling the defendants to produce other information, but the parties have advised the Court that the parties have resolved the disputes over all but Interrogatories Numbered 13, 14, 17, and 22, and Requests for Production Numbered

Further, plaintiff's supplemental memoranda address electronic discovery matters and request an order (1) requiring Kaman to verify the extent to which it (a) placed a litigation hold on all documents that could potentially be relevant in this case, and (b) searched its electronic data (both local and storage) for relevant, responsive documents in this case, and (2) requiring that Kaman produce all responsive electronic documents.

## DISCUSSION

I. **Discovery Requests**

Under Federal Rule of Civil Procedure Rule 26(b)(1), parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Relevancy is broadly construed, and "a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party." *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 52 (D. Conn. 2005) (original emphasis). Even if relevant, however, "discovery is not permitted where there is no need shown or compliance would be unduly burdensome, or where harm to the person from whom the discovery is sought outweighs the need of the person seeking the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999), quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir.1990).

Each document request and interrogatory at issue between the parties is discussed in turn below.

---

13, 14, 17, 22, 27, 28, 30, and 31.  As a result, this Order addresses only those remaining disputed interrogatories and requests for production.

### A. Document Requests and Interrogatories 13 & 14

These requests relate to meetings and communications between Caputo and Higgins. Plaintiff argues that these go to Kaman's defense that the plaintiff was demoted regarding performance issues. Defendants agreed to produce communications from 2007 to May 2008, and at least some of those documents have apparently been provided. Plaintiff does not indicate that he objected to the defendants' limitation of communications from 2007 through May 2008; however, electronic information related to these document requests and interrogatories may be at issue still. Those will be discussed in Section II, below.

### B. Document Request and Interrogatory 17

These requests concern information regarding Higgins's job positions: specifically, the interrogatory states "identify each job title or position that he has held, and for each such job title or position, state the dates that he held the job title or position, identify each person who supervised Higgins and/or to whom Higgins reported and the dates of supervision and/or reporting, and identify all documents pertaining to this interrogatory." While the interrogatory may call for a limited amount of information (which defendants have provided), the "documents pertaining" to Mr. Higgins's "supervision" could be read as requiring production of a very broad category of documents. Plaintiff states in his memoranda that he wants documents concerning the decision making leading to Higgins's promotion because he believes Higgins and Caputo conspired to replace the plaintiff with a younger manager (Higgins himself). (#29 at 7; #34 at 6.)

Defendants' objection to providing documents that concern the decision-making leading to Higgins's promotion is that Kaman is entitled to exercise its judgment regarding making promotions. Kaman also adds that Higgins is in the same protected class as plaintiff and that

Higgins's promotion after plaintiff's suspension is of no consequence to whether Kaman discriminated against plaintiff.

To the extent plaintiff wants documents related to Higgins's promotion, documents reflecting Kaman's decision to promote Higgins to plaintiff's former position eight months after plaintiff's suspension are only relevant to the extent they showed a preference for Higgins because he was younger than the plaintiff. To the extent plaintiff seeks documents related to his "theory that [Higgins] participated in the discriminatory acts as an employee" and to "whether [Higgins] received beneficial changes in his employment status prior to Plaintiff's termination," plaintiff should have requested (and perhaps already did request) those documents. The Court will order production of documents pertaining to Higgins's promotion to the extent they discuss or refer to Higgins's age, the plaintiff, or the plaintiff's age.

    **C.**    **Document Request and Interrogatory 22**

This request seeks information regarding the indefinite suspension of other Kaman employees. Plaintiff requested the following for each suspended employee: the name, date, reason for suspension, and the name of the person who made the suspension decision, in addition to all related documents. Defendants answered the interrogatory by saying only that 21 employees have been suspended since 2004, but defendants argue that responding further would be overly burdensome (Kaman would have to search its employee files by hand to gather the information and documents) and a violation of privacy of the 21 suspended employees.

Plaintiff states that this information goes to whether his suspension was discriminatory, particularly in light of Kaman's assertion that indefinite suspensions are regular practice and not, as plaintiff asserts, a retaliatory measure taken against plaintiff for filing his discrimination

charge. Plaintiff also argues that any privacy issues can be address by redacting sensitive information.

Because Kaman knows that 21 employees have been indefinitely suspended since 2004, it does not seem burdensome to locate those 21 employee files (and search the appropriate electronic data) and provide the information plaintiff requests. Defendants argue that neither the Court nor the plaintiff are entitled to secondguess Kaman's employment decisions, but Defendant Kaman has put its practice of indefinitely suspending its employees at issue by indicating that it is a regular practice and not retaliatory. Kaman may protect its employees' privacy by providing the information subject to the Protective Order already requested by the parties and entered by this Court (#21), and by redacting private and other nonresponsive information. Further, Defendants' document production will be limited to documents related to why the employee was suspended and whether the employee had filed a discrimination claim against the company. The entire personnel file of each suspended employee is not subject to production, although some information contained in personnel files may need to be produced.

### D. Document Requests 27 & 28

These requests are for Defendant Caputo and Higgins's personnel files. Defendant Caputo's personnel file is discoverable because he has been charged with discrimination. *See E.E.O.C. v. Con-Way Freight, Inc.*, No. 4:07-CV-1638 CEJ, 2008 WL 4066424, *4 n.3 (E.D. Mo. Aug. 27, 2008); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 687 (D. Kan. 2000). Indeed, if "the individual is alleged to have engaged in the discrimination or harassment at issue or played an important role in the employment decision or incident that gives rise to the lawsuit, the personnel file will be considered relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable." 192 F.R.D. at 687. Caputo and Higgins are

alleged to have participated in the discrimination at issue here, and plaintiff alleges that Caputo and Higgins worked together to undermine plaintiff's authority as Branch Manager. Because both employees are alleged to have engaged in the discriminatory behavior, the Court will permit limited discovery of both Caputo's and Higgins's personnel files. Information regarding Defendant Caputo's and Mr. Higgins's health insurance and other benefits may be redacted or withheld from production. In addition, the production shall be made subject to the Protective Order and redactions should be made to address privacy concerns.

E. **Document Requests and Interrogatories 30 & 31**

These requests concern information related to external and internal complaints at the company alleging discrimination. Defendants agreed to produce materials related to complaints about age discrimination and retaliation (but defendants' Declarant states there have been none, other than those made by plaintiff (#48-2 at ¶¶ 17-19)). Plaintiff argues that other instances of discrimination and/or retaliation are relevant to the issue of pretext, and that his inquiry should not be limited to Caputo's district because many of the discriminatory and retaliatory actions plaintiff alleges were done with the advice or knowledge of Kaman's corporate human resources department. Indeed, plaintiff alleges that Caputo remarked that there was a company-wide plan to seek out "younger blood." As a result, internal and external complaints about age discrimination and retaliation are discoverable; however, complaints related to other types of discrimination are unlikely to be either admissible or relevant to determining whether defendants discriminated against plaintiff because of his age. As a result, because defendants have already stated that there have been no internal or external complaints about age discrimination since 2004, no further discovery will be ordered from the defendants on this matter. Defendants will be ordered to confirm they have conducted a company-wide search and not merely a search of

employees in Caputo's division.

## II.      Electronic Discovery Issues

As discussed above, plaintiff's Document Requests and Interrogatories 13 and 14 requested information about meetings and communications between Caputo and Higgins. Plaintiff contends that defendants are withholding emails responsive to those requests under the guise of Kaman's purported email retention policy.

### A.      Legal Standard

"The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation." *E*Trade Securities LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005) (citing *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir.2004); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003)). Discovery is not limited to accessible electronic data, but should also include discovery of deleted data and data stored on storage tapes and other remote archiving systems. *See, e.g.*, *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002) (collecting cases).

Electronic data have changed the way parties litigate and conduct discovery. "Litigation holds" – the suspension of routine document and data retention policies – are particularly necessary in the electronic age and certainly in discrimination cases, where plaintiffs frequently seek to use e-mails as evidence of discriminatory behavior. *See, e.g.*, *Zubulake*, 220 F.R.D. at 217-19 (discussing when the defendant employer's duty to preserve attached and what the ensuing litigation hold entailed). Because parties have different electronic data storage systems and different retention practices, the parties and their attorneys must learn early on what their own systems and practices are in order to preserve documents properly. That information may

also need to be shared with opponents (and sometimes, the Court) to determine whether each party has satisfied its discovery obligations. As *Zubulake* – a gender discrimination case – explains, a party "must retain all relevant documents (but not multiple identical copies) in existence at the time the duty to preserve attaches, and any relevant documents created thereafter. In recognition of the fact that there are many ways to manage electronic data, litigants are free to choose how this task is accomplished." 220 F.R.D. at 218. For example, a party could (1) retain existing storage archives or back-up tapes, (2) retain later-created documents in a separate electronic file, and (3) create a "mirror-image" of the computer system at the date the duty to preserve attaches to create a complete set of relevant documents. *See id.*

      B.      **Defendants' Preservation Efforts**

Here, Defendant Kaman has provided a Declaration from its Vice President for Human Resources and Productivity, Robert Goff, to address its electronic discovery efforts. The Declaration provides, among other things, a description of Kaman's e-mail retention policy. E-mails sent through Kaman's server are archived at the end of each work week. The e-mails are maintained for one year from the date of archiving, and, unless manually preserved somehow, every e-mail is removed from the server one year from the date it was archived. The declaration also states that, when notified of plaintiff's claim with the Missouri Human Rights Commission (which occurred January 26, 2008), Kaman "gathered and preserved" documents reasonably related to plaintiff's employment and claim. The declaration states that Kaman preserved e-mails that were reasonably related to plaintiff's employment and claim, but that "routine e-mails concerning customers or other matters in which Plaintiff was involved" were not preserved. The Declaration is silent on how electronic data were preserved or which employees' data was preserved.

### C. Defendants' Production

Defendants maintain that they have produced over 900 pages of documents, including all communications between Higgins and Caputo from January 2007 through May 2008 "that were preserved from this time frame." Critically, Higgins's laptop was stolen in May 2010. As a result, Kaman says it was not able to search Higgins's computer for e-mails to or from Caputo. Defendant Caputo, however, searched his own computer and provided documents to counsel for production, which defendants contend satisfies their obligations.

### D. Plaintiff's Objections

Plaintiff asserts that he is entitled to more e-mails than defendants have produced in response to Document Requests and Interrogatories 13 and 14. In particular, plaintiff contends that he is entitled to a search of Higgins's laptop or archived data even though, defendants say, they have already searched Caputo's computer for responsive e-mails. Plaintiff is correct. While e-mails between Caputo and Higgins may be in Caputo's possession as well as Higgins's, plaintiff is entitled to search Higgins's laptop and e-mails (wherever they are stored). Particularly in light of Kaman's e-mail system – in which e-mails may be "manually" saved or else they are deleted after a year – Caputo may or may not be relied on to have retained all the relevant and responsive e-mails. Ideally, Kaman would have made a copy of all of Caputo's e-mails and all of Higgins's e-mails as they existed on the server at the moment Kaman became aware of the potential for plaintiff's claim, such that a copy of the server contents as they existed on that day could be searched when the time came.

On that note, plaintiff argues that defendants had a duty to preserve Higgins's electronic data no later than October 2008 (when plaintiff named Higgins as a respondent in his amended charge of discrimination), or in February 2009 (when plaintiff filed this law suit), or certainly no

later than March 2010 (when plaintiff filed his discovery requests that specifically called for a search of Higgins's data). The laptop was stolen in May 2010, two months after Higgins served his discovery requests. As a result, plaintiff argues, the defendants should be required to search backup tapes and any other archives for responsive documents.[2]

The Court agrees that defendants' Declaration is insufficient to determine whether they have satisfied their discovery obligations. The following information is necessary to make that determination:

(1)     As plaintiff points out in his supplemental reply brief, the Declaration indicates that defendants have searched a live data server, which archives e-mails for one year. The data server appears to be a "live server" because the Declaration states that e-mails are deleted "from the Kaman server" rather than from a separate storage archive. Does a separate storage archive exist? If such a separate storage archive exists, that archive is also subject to search for and production of responsive documents.

(2)     It is also unclear what happens to e-mails that are "manually preserved" – *i.e.*, where are they kept, where are they backed up, and how were such "manually preserved" e-mails preserved and searched for this litigation?

(3)     If e-mails and other documents may be kept on an employee's computer (as the Higgins situation implies), how is the employee's computer backed up in case of loss, computer system failure, or theft?

---

[2]The Court notes that defendants were under an obligation to search backup tapes and archives for responsive documents as a general matter. *Antioch*, 210 F.R.D. at 652. Here, plaintiff only raises that objection with respect to defendants' response to Requests for Production and Interrogatories 13 and 14.

(4) What methods of electronic preservation did Kaman use? For example, *Zubulake* suggests a method that includes retaining existing storage archives or back-up tapes, retaining later-created documents in a separate electronic file, and creating a "mirror-image" of computer systems. 220 F.R.D. at 218. Kaman states only that it "preserved" certain documents and e-mails. What did Kaman do here to preserve its electronic data? While *Zubulake*'s three steps are not a requirement, they are instructive in showing what may need to be done to create a complete set of electronic data in anticipation of litigation that can later be searched for relevant and responsive documents.

(5) Finally, how and when did Kaman preserve Higgins's electronic data (including, if applicable, why electronic data were not preserved before May 2010), and to what extent are backup copies of Higgins's electronic data now available for searching?

The defendants will be ordered to provide the court with an affidavit or declaration from a person or persons with knowledge of Kaman's information technology systems to answer the questions posed above and to provide whatever other information is necessary to create a clear and comprehensive description of Kaman's electronic data systems, policies, and the steps it took to preserve electronic data in anticipation of and throughout this litigation. Further, addressing the specific question of Higgins's laptop, defendants' submission to the Court should provide a copy of the police report that was presumably filed when Higgins and Kaman realized the laptop had been stolen.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel (#28) is **GRANTED** in part and **DENIED** in part**.**

**IT IS FURTHER ORDERED** that defendant Kaman shall within 28 days of the entry of this Memorandum & Order respond to Request for Production and Interrogatory 17 by producing documents pertaining to Higgins's promotion to the extent they discuss or refer to Higgins's age, the plaintiff, or the plaintiff's age.

**IT IS FURTHER ORDERED** that defendant Kaman shall within 28 days of the entry of this Memorandum & Order respond to Request for Production and Interrogatory 22 by producing documents related to why each of the indefinitely suspended employees was suspended and whether the employee had filed a discrimination claim against the company.

**IT IS FURTHER ORDERED** that defendant Kaman shall within 28 days of the entry of this Memorandum & Order respond to Requests for Production 27 and 28. Kaman shall produce those documents under the Protective Order entered in this case, and Kaman may withhold or redact information relating to health insurance or other routine benefits matters.

**IT IS FURTHER ORDERED** that defendant Kaman shall confirm within 28 days of the entry of this Memorandum & Order that, with respect to Requests for Production 30 and 31, no Kaman employee – regardless of division – had made any allegation or complaint relating to age discrimination since January 1, 2004.

**IT IS FURTHER ORDERED** that defendant Kaman shall submit to the Court within 14 days of the entry of this Memorandum & Order an explanation of its electronic data systems and policies sufficient to respond to the issues raised at Pages 11-12 of this Memorandum & Order. Defendant Kaman shall include with its submission a copy of the police report filed in connection with the May 2010 theft of Kenneth Higgins's laptop computer, along with affidavits or declarations necessary to support the information contained in its submission.

Dated this __29th__ day of September, 2010.

                                                      UNITED STATES DISTRICT JUDGE