UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| JAMES TRICKEY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 1:09CV26 SNLJ |
| KAMAN INDUSTRIAL TECHNOLOGIES CORP., et al. | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This is an employment discrimination case under the Missouri Human Rights Act (MHRA) Section 213.010 RSMo *et seq*. This matter is before the Court on defendants' Motion for Summary Judgment (#64), filed November 29, 2010. Following numerous extensions, responsive and supplemental memoranda have been filed, and this matter is now ripe for disposition.

Plaintiff originally filed this cause of action in the Circuit Court of Cape Girardeau County on February 6, 2009, alleging that plaintiff's former employer, defendant Kaman Industrial Technologies Corp. ("Kaman"), and two employees of Kaman, defendants Tom Caputo and Ken Higgins, violated the MHRA by discriminating against plaintiff based on his age. Higgins was subsequently dismissed as a defendant because Higgins was not an employer within the meaning of the MHRA, and thus plaintiff's claim against Higgins was barred (#14). This Court retained diversity jurisdiction over this matter under 28 U.S.C. § 1332.

**I.     Background**

At the outset, the Court notes that the parties have set forth over 300 statements of fact and accompanying responses and replies.[1]  Defendants have not specifically admitted or disputed many of plaintiff's statements of fact, but instead they have objected on the basis that plaintiff failed to authenticate his supporting documents.  Plaintiff later provided authentication for most of his supporting documents (#93).  The defendants accepted authentication of all but one document, which consisted of newspaper clippings not pertinent to the Court's ruling.  Defendants' objections therefore no longer apply, and the Court will deem those facts admitted where not otherwise disputed.  In addition, both parties are guilty of quibbling over perceived nuances within many of the statements of fact.[2]  The Court has reviewed the statements and their supporting documentation carefully, and, where appropriate, will accept facts as supported by appropriate admissible evidence.

The following facts are undisputed, except where indicated.  Plaintiff was employed by Kaman as Branch Manager for the Cape Girardeau, Missouri branch.  He reported directly to defendant Caputo, who was a District Manager for Kaman.  Caputo hired plaintiff in May 2000, when Caputo was 52 years old and plaintiff was 57.  Plaintiff's yearly performance reviews

---

[1] The Court also notes that the plaintiff filed a "Statement of Additional Material Facts" in opposition to the summary judgment motion. Pursuant to Local Rule 7-4.01(E), "Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists."  Plaintiff, apparently, submitted the opposite; however, the Court will proceed with the record as it stands in the interest of judicial and other economies.

[2] For example, plaintiff's Fact #251 states that "In his sworn testimony, Higgins denied surveying plaintiff."  Defendants dispute the fact, stating that it "mischaracterizes Higgins' testimony.  He was asked whether he was involved in setting up the surveillance of plaintiff, and Mr. Higgins stated that he was not."  In fact, Higgins testified "I didn't do any surveillance."  The Court is uncertain how defendants can justify their dispute of this fact.

indicated that he met or exceeded expectations each year, until 2007. Plaintiff was given a leadership award in 2005, and he was asked to manage the Jonesboro, Arkansas branch in addition to the Cape Girardeau branch in 2006. Under plaintiff's management, the Cape Girardeau branch improved its performance and performed well through 2007 and into 2008.

Sometime in 2007, plaintiff's relationship with Kaman began to deteriorate. Plaintiff says that defendant Caputo told him, first while playing golf in the summer and again at a meeting later that year, that "the average age of management at Kaman was 59 years old." Plaintiff also says that Caputo followed up those statements with comments about the company's need to get some "new blood." Plaintiff testified that he took that to mean that Kaman was looking for new, younger employees. Defendants dispute that Caputo made those statements.

In September 2007, Caputo sent a letter to Laura Reeves in Kaman's human resources department outlining his concerns with plaintiff's performance as Branch Manager. Caputo did not share the contents of that letter with plaintiff. Then, plaintiff's December 2007 Performance Review was poor, and Caputo designed and implemented a Performance Improvement Plan ("PIP") for plaintiff. Whereas in past years, plaintiff's skills and abilities had met or exceeded expectations, plaintiff's 2007 scores were "Needs Improvement" or "Meets Expectations." Notably, the 2006 performance review included specific comments for each rated skill or ability, but the 2007 performance review included only scores with little or no written comments for the rated skills and abilities.

Plaintiff's PIP required him to, among other things, (1) hold a meeting with the branch team by December 10, (2) hold weekly progress review meetings, (3) submit a 2008 business plan by January 4, and (4) submit personal weekly plans and report to Caputo each Friday. Plaintiff was also instructed to attend training on computer and management skills by the end of

3

the first quarter of 2008. Plaintiff signed the PIP, indicating "that if I do not meet these expectations over the next 90 days, further disciplinary action may result, up to an including termination."

On January 2, 2008, plaintiff mailed a written rebuttal to his 2007 Performance Review to Laura Reeves and Kaman's president. The rebuttal addressed Caputo's criticism that, among other things, plaintiff spent too much time inside the office rather than generating new business. In his rebuttal, plaintiff explained that because the branch was short-handed, he had often worked in the office to support inside sales. Plaintiff requested authority to hire more employees, and Caputo himself recognized the "urgent need to hire an inside salesperson to support the robust growth in Cape Girardeau," but his requests went unanswered with no explanation. Furthermore, his attempts to seek the training required by his PIP also went unanswered. No one at Kaman responded to his January 2 rebuttal letter.

Plaintiff had a phone call with Kaman Vice President Robert Goff on January 19, 2011 and alleged that he was being discriminated against because of his age. In that conversation, which plaintiff recorded, Goff suggested that plaintiff retire, but plaintiff said "I don't really want to. I've got a good branch. We're doing very well. We're number five in the company." Goff responded that the "branch is doing exceptionally well."

On January 26, 2008, plaintiff filed a charge of age discrimination and retaliation with the Missouri Commission on Human Rights. Whether plaintiff achieved all of the PIP objectives by the prescribed deadlines is disputed, but plaintiff was demoted to Professional Accounts Manager ("PAM") on February 4, 2008.

Plaintiff's relationships with his coworkers had become strained (although the parties agree that plaintiff's relationship with some employees had been strained for years), so plaintiff

4

began working as a PAM from home.  He was assigned accounts and expected to build sales, but he was not allowed to pursue accounts that he had previously worked on that were sure to be fruitful.  He emailed Caputo requesting accounts that had been previously assigned to an employee who recently left, but Caputo did not respond to plaintiff's email or assign the accounts to plaintiff.  Caputo also consented in a phone conversation and by email to plaintiff's working from home, despite telling plaintiff that he needed to work from his office computer and not his home computer.  Human Resources director and Vice President Robert Goff was not aware that plaintiff had permission to work from home.

Ken Higgins, who by this time had assumed some duties of Branch Manager, including finishing the 2008 business plan for the branch, covertly observed plaintiff at his home and reported back to Caputo that plaintiff was not working because he had been seen landscaping his yard. (Plaintiff explained that he took a break from work to help his wife in the yard, but defendants dispute that.) Defendants then hired a private investigator to report on plaintiff's activities.  Goff testified that, by that point, "It seemed a futile situation.  But we were hopeful that perhaps some additional information of poor performance or bad behavior would add to our case."  Goff further said that Kaman had considered terminating plaintiff in February, when plaintiff was demoted instead.

During the private investigator's and Higgins's surveillance, plaintiff was using the company truck and trailer over the weekend for personal use.  Although plaintiff admits to using the truck, he denies the company's accusation that he wrongfully established an account in Kaman's name at a retailer in order to avoid state sales tax.  Finally, the private investigator reported that plaintiff was running personal errands or staying in his home on each of three mornings of surveillance.  Kaman interpreted this as a failure to perform his job adequately.

Plaintiff points out, however, that Goff did not know that he was permitted to work from home. Furthermore, plaintiff disputes that he was not performing his job, as he says he was making sales calls by telephone and otherwise working out of his home office. In addition, plaintiff notes that the investigator observed plaintiff only in the morning and never after 1:00 p.m.

On May 8, 2008, Goff wrote plaintiff a letter putting him on indefinite, unpaid suspension pending his decision to accept severance pay and retire. Plaintiff remained on unpaid suspension until mediation efforts in this litigation failed. Plaintiff seeks compensation for defendants' alleged discrimination based on age and retaliation in violation of the MHRA, § 213.010, *et seq.* RsMO.

## II. Legal Standard

"Summary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. 2007). "Summary judgment should not be granted unless evidence could not support any reasonable inference for the non-movant." *Id.* Indeed, for the plaintiff to survive summary judgment, the record must show "two plausible, but contradictory, accounts of the essential facts" and that "the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." *Id.* at 820.

Pursuant to Rule 59(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

## III. Discussion

Plaintiff claims that defendants discriminated against him based on his age in violation of § 213.055 RSMo, and that they also retaliated against him in violation of § 213.070 RSMo for making an age discrimination claim with the Missouri Human Rights Commission. Plaintiff alleges a number of discriminatory acts, including his negative performance review and PIP in December 2007, his demotion prior to the end of his PIP, his assignment of "dead" accounts, and his two-year unpaid indefinite suspension.

### A. The Missouri Human Rights Act

The MHRA makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... age." § 213.055(1)(a) RSMo. It is also unlawful to "retaliate or discriminate in any manner against any other person because such person has ... filed a complaint...pursuant to this chapter." § 213.070(2) RSMo.

7

The Missouri Supreme Court has recently articulated that courts should be "guided by both Missouri law and federal employment discrimination case law that is consistent with Missouri law." *Daugherty*, 231 S.W.3d at 818. However, in comparing the MHRA to federal employment discrimination standards, the Missouri Supreme Court cautioned that the MHRA's discrimination safeguards "are not identical to the federal standards and can offer greater discrimination protection." *Id.* at 819. Indeed, Section 213.055, which prohibits employment discrimination based on age, is more protective than the federal equivalent, because the MHRA defines "discrimination" to include "any unfair treatment based on...age as it relates to employment..." and does not require a plaintiff to prove that discrimination was a "substantial or determining factor in an employment decision; if consideration of age, disability, or other protected characteristics contributed to the unfair treatment, that is sufficient." 231 S.W.3d at 819 (quoting and citing §213.010(5) RSMo). The *Daugherty* Court held that summary judgment decisions should be analyzed under the standards set forth in the pattern verdict-directing jury instructions for MHRA employment discrimination cases. *Id.* at 820.

A claim of violation of Section 213.055 is submitted to the jury as follows:

> Your verdict must be for plaintiff if you believe:
>
> First, defendant (here insert the alleged discriminatory act, such as "failed to hire," "discharged" or other act within the scope of Section 213.055, RSMo) plaintiff, and
>
> Second, (here insert one or more of the protected classifications supported by the evidence such as race, color, religion, national origin, sex, ancestry, age, or disability) was a contributing factor in such (here, repeat alleged discriminatory act, such as "failure to hire," "discharge," etc.), and
>
> Third, as a direct result of such conduct, plaintiff sustained damage.

>       *[unless you believe plaintiff is not entitled to recover by reason of
>       Instruction Number (here insert number of affirmative defense
>       instruction)].

MAI 31.24 (6th Ed. Supp.2007). Retaliation for opposing discrimination or for filing a complaint also constitutes discrimination under the MHRA, and is proven by the same elements. *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664-65 (Mo. 2009).

    **B.**    **Discrimination Claim**

There is no dispute that plaintiff was entitled to the age discrimination protections of the MHRA, which apply to persons aged 40 to 70. § 213.010(1) RSMo. There is also no dispute that plaintiff was demoted, indefinitely suspended, and terminated, and that he suffered harm as a result. The only issue for summary judgment is whether there exists a genuine issue of material fact as to whether plaintiff's age was a "contributing factor" in the defendants' employment decisions. *Id.*

Defendants contend that its employment decisions affecting plaintiff were based solely on plaintiff's declining performance at Kaman and his breaches of Kaman's internal code of conduct. Plaintiff's evidence supporting that age discrimination was a contributing factor includes both direct and indirect evidence.

"Direct evidence includes evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude, if it sufficiently supports an inference that the discriminatory attitude was more likely than not a motivating factor." *Daugherty*, 231 S.W.3d at 818 n.4 (citing *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993)). "Statements by decision-makers, however, are not considered direct evidence if they are unrelated to the decisional process. Direct evidence is

9

not common in discrimination cases because employers are shrewd enough to not leave a trail of direct evidence." *Id.* (internal citation omitted).

Plaintiff points to several statements made by defendant Caputo as direct evidence of discrimination. In response to Higgins's request for a pay raise, Caputo stated in a March 2006 email that it was necessary to "do something here anyway, since Jim Trickey has about 4 years before retiring. Plaintiff also points to Caputo's statements on two separate occasions in 2007 that the average age of management at Kaman was 59 years old and that the company was looking for "new blood." Plaintiff, the oldest branch manager in Caputo's district, asserts that after Caputo made those statements — around the time plaintiff turned 65 — defendants took a series of adverse employment actions against him.

Defendants urge this Court to consider Caputo's alleged comment as a "stray remark [that is] too vague to demonstrate a discriminatory attitude." *See Hill v. St. Louis Univ.*, 923 F. Supp. 1199, 1215 (E.D. Mo. 1996). Plaintiff counters that Missouri courts have never recognized the "stray remark doctrine," and defendants do not argue otherwise. Defendants also state that these remarks do not constitute "direct evidence" of discrimination because the statements did not occur contemporaneously with the employment decision. Defendants argue that plaintiff must therefore establish some causal relationship between the statements and the adverse employment action. *See Wittenburg v. Am. Express Fin. Advisors, Inc.*, 464 F.3d 831, 837 (8th Cir. 2006) (applying federal and Minnesota law). Indeed, "[s]tatements by the decision-makers...are not considered direct evidence if they are unrelated to the decisional process." *Daugherty*, 231 S.W.3d at 818 n.4. This Court, however, cannot say that Caputo's alleged statements were unrelated to plaintiff's treatment, as the remarks allegedly took place just before or during the events leading to the adverse employment actions plaintiff complains of.

Further, defendants argue that — assuming for summary judgment purposes that Caputo made the statements about aging management and "new blood" — Caputo only meant they needed to hire new employees, not necessarily younger employees.[3] However, the Court notes that Caputo was apparently unwilling to authorize plaintiff to hire the new employees that plaintiff himself requested for the Cape Girardeau branch. In addition, regardless of whether Caputo's alleged statements are direct or indirect evidence of discrimination, other evidence shows that the defendants were looking to "add to" their case for firing plaintiff. There is also evidence to suggest that defendants, despite devising a "Performance Improvement Plan," set plaintiff up to fail by refusing to assign to him profitable and otherwise unassigned accounts, ignoring his requests for training, ignoring his rebuttal letter, and demoting him before the 90-day "deadline" articulated on the PIP. Drawing all inferences in favor of the plaintiff for the purposes of this motion, the parties present two "plausible, but contradictory, accounts of the essential facts." 231 S.W.3d at 820.

---

[3]Notably, defendants include in their statement of facts that plaintiff "admitted that Caputo did not say anything that would suggest that Caputo meant 'younger guys' when he said 'new blood.'" (#87 at ¶ 98.) Plaintiff disputes this statement, but defendants state that the Court must deem it to be admitted because "plaintiff cannot contradict his own testimony, which was reflected in SOF 98." The Court notes that plaintiff does *not* contradict his own testimony. The testimony is as follows:

> Q: Okay. And why did you take that to mean younger?
> A: Well, the statement is talking about somebody that's 59 years old and, I mean, it seems new blood meaning younger guys I guess. I mean...
> Q: Did he say anything that would suggest that he meant younger guys? *Other than the words you've told me obviously*.
> A: Right. No.

(Emphasis added.) Plaintiff thus testified that, in context of the 59-year-old average age statement, he took "new blood" to mean "younger." Although nothing further was stated, it is not true that there was no reason for plaintiff to understand "new blood" as meaning "younger blood" in that context.

Finally, the Court addresses Kaman's argument that it fired plaintiff due to plaintiff's poor job performance and violations of Kaman's internal code of conduct. As for plaintiff's allegedly poor job performance, plaintiff notes that defendants cite only Caputo's "perception" of increasing complaints from subordinates and customers. Plaintiff showed that these employee and customer complaints happened much earlier — or in the case of one customer, perhaps not at all. Plaintiff's yearly reviews had been excellent for years, until 2007. Plaintiff's branch was performing extremely well before and during the time when he was put on a Performance Improvement Plan, demoted, and suspended. Plaintiff presented evidence that defendants were effectively setting him up to fail and that they were in cahoots with plaintiff's ambitious subordinate. Plaintiff has also shown that, although Kaman said he wrongfully worked from home, he actually had permission from Caputo to do so. Finally, plaintiff contends that he did nothing wrong with respect to the company's allegation that he used the company truck on the weekends and set up company retail accounts. Although the discrimination laws do not prevent employment decisions based on poor performance or company policy, plaintiff presents evidence that Kaman's and Caputo's purported reasons for demoting and suspending him were untrue, and, as such, plaintiff is entitled to present evidence of the falsehood of Caputo's and Kaman's explanations as evidence of discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

C.  **Retaliation Claim**

Plaintiff contends that he was, among other things, demoted and suspended in retaliation for filing his age discrimination charge. Defendants contend that the discrimination laws do not protect plaintiff from demotion or termination for poor work performance or misconduct, and they argue that despite the proximity of his complaint (January 26, 2008) to his demotion

(February 4, 2008), the decision was based on problems that originated before plaintiff filed his complaint. Defendants state that plaintiff failed to improve his performance as Branch Manager in the weeks since he began his Performance Improvement Plan, and that was why they demoted him. However, as discussed above, plaintiff has presented evidence that the 90-day PIP period was cut short and that his efforts to comply with the Plan had been thwarted by Caputo and others. As with plaintiff's discrimination claim, he has presented evidence that raises a genuine issue of fact as to whether retaliation was a contributing factor in defendants' employment decision.

### D. Conclusion

Plaintiff has shown that disputed issues of fact exist as to whether plaintiff's age contributed to the defendants' employment decisions. In addition, plaintiff has shown that an issue of fact exists as to whether retaliation was a contributing factor in the adverse employment decisions. Both plaintiff and defendants articulate plausible, but contradictory accounts of what happened, and summary judgment will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment (#64) is **DENIED.**

Dated this 5th day of July, 2011.

_____
UNITED STATES DISTRICT JUDGE